UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Brynn E. Jackson,

                                    Plaintiff,

            v.

Commissioner of Social Security,

                                    Defendant.

**Decision and Order**

19-CV-378 HBS
(Consent)

## I.    INTRODUCTION

        The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c).  The Court

has reviewed the Certified Administrative Record in this case (Dkt. No. 7, pages hereafter cited in

brackets), and familiarity is presumed.  This case comes before the Court on cross-motions for

judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. Nos. 10,

12.)  In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the

"Commissioner") that she was not entitled to Supplemental Security Income under Title XVI of the

Social Security Act.  The Court has deemed the motions submitted on papers under Rule 78(b).

## II.    DISCUSSION

        "The scope of review of a disability determination . . . involves two levels of inquiry.  We

must first decide whether HHS applied the correct legal principles in making the determination.  We

must then decide whether the determination is supported by substantial evidence."  *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted).  When a district

court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by

substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).  Substantial evidence is defined as

"'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous

2

work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ."  42 U.S.C. §§ 423(d) (2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment.  *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform."  *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467.  If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends.  20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  However, the ALJ has an affirmative duty to develop the record.  *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

physical and mental demands of the work done in the past.  20 C.F.R. §§ 404.1520(e) & 416.920(e).
The ALJ must then determine the individual's ability to return to past relevant work given the RFC.
*Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff challenges the Commissioner's final determination that her anxiety and depression
are not severe impairments and cause no functional limitations.  The ALJ found that plaintiff had a
severe impairment of Asperger's syndrome.  [20.]  The ALJ did not add depression or anxiety as
additional severe impairments because, in the ALJ's assessment, plaintiff's mental health responded
to medication and to cognitive coping mechanisms.  [21.]  After finding that plaintiff did not meet
any medical listing, the ALJ decided that plaintiff had the RFC for a full range of work at all
exertional levels but with the following non-exertional limitations: "can do simple, routine, repetitive
tasks; can have little change in work structure or routine; can have occasional contact with
coworkers, supervisors, and the general public; cannot work in teams or tandem; and requires a low
stress job meaning no high production quotas or fast-paced assembly."  [22.]  Plaintiff argues that
the ALJ overstated the quality of her mental health:

> Treatment notes from the Plaintiff's mental health provider, Karen Bobinski,
> who had a long-term treating relationship for mental health impairments reported on
> December 8, 2015 that she continued with symptoms of depression and anxiety
> evidenced by her examination findings of manic, depressed and anxious mood with
> circumstantial thought process and content with only fair insight and judgment.  (Tr.
> 472-473).  On December 28, 2015, Ms. Bobinski reported that the Plaintiff presented
> with continued symptoms of depression, anxiety, and irritability consistent with her
> presentation on examination.  (Tr. 478-479).  As of January 6, 2016, Dr. Varallo
> reported she appeared quite flightly with rapid speech and still unable to be alone
> with the baby.  Further Dr. Varallo commented that patient admitted she lacked an
> ability to focus and concentrate.  (Tr. 480).  On January 11, 2016 Ms. Babinski
> reported that the Plaintiff presented with increased thoughts to harm self, increased
> anxiety and increased depression.  (Tr. 482).  On March 7, 2016, Ms. Bobinski
> reported that she again had increased symptoms of anxiety, continued symptoms of
> depression, and feared repeated hospitalization for her mental health issues.  (Tr.
> 490).  On that same date, Dr. Varallo reported that Plaintiff was overwhelmed with
> anxiety, having a hard time functioning, experiencing racing thoughts, and sleeping
> excessively.  (Tr. 492).  Dr. Varallo reported on March 21, 2016 that Patient was

4

having more intrusive disturbing thoughts, negative ruminating thoughts, and depressed mood (Tr. 494). In fact within the month of March, 2016, Dr. Varallo saw the Plaintiff three times because of the escalation of her symptoms and the necessary changes to her medications. (Tr. 498). Review of the mental health treatment notes clearly show that while there was fluctuation in the Plaintiff's symptoms, there is no evidence to support the conclusion that she was doing well with no major problems. (Tr. 500-576).

The ALJ asserts that the Plaintiff testified that she was able to care for her child after the child was 10 months old. (Tr. 17). The Plaintiff actually testified she had to have someone with her all the time until he was 10 months old. However, she also testified that when it was no longer necessary to have someone else there around the clock she still had help with her son during the day. The Plaintiff testified "my mother would help me throughout the whole day with him every day while my husband was at work." (Tr. 49). The Plaintiff testified that her mother would hold him and instruct her when to change his diaper, to try putting him in his bouncer to give him toys to play with, and to give him a bottle. (Tr. 50). The function report completed by the Plaintiff on February 14, 2016 indicated that she needed help with caring for their child stating that her husband "does everything necessary. . . [and] my mom and dad help with everything Monday to Friday" while her husband is working (Tr. 158). The Plaintiff's mother testified confirming the fact that until October, 2017, the Plaintiff would be at her house every day with the baby. (Tr. 67). Mrs. Potter testified that it was her opinion that she could only be home alone with the baby for an hour or two because the Plaintiff has to be reminded to take care of him explaining that there was a time where she left her son in his bed for five and ½ hours. (Tr. 69). This fact confirmed with Dr. Varallo's report that as of September 9, 2016 the Plaintiff is being left alone with the baby for a couple of hours. (Tr. 527). Finally, at the hearing the Plaintiff also testified that she had a social worker from Healthy Families coming into the home and that she "has done a multitudinous amount of things for him [her son]." (Tr. 51). There is no evidence in the record that the Plaintiff was taking care of her son at age 10 months without further necessary assistance.

(Dkt. No. 10-1 at 22–24.) The Commissioner responds by acknowledging times when plaintiff's symptoms worsened but by noting that the overall record shows mental health stability:

The ALJ properly evaluated Plaintiff's mental impairments and gave appropriate rationale for her findings. Plaintiff finds fault with ALJ's rationale that Plaintiff's depression symptoms improved with treatment and therefore the impairment was not severe (Pl. Br. at 22). A condition is not severe if the impairment improves from treatment. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983). Although Plaintiff disagrees with the ALJ's finding that her mental health improved with treatment, the ALJ's finding is supported by substantial evidence. As noted by the ALJ, Plaintiff received treatment for depression throughout 2015 (Tr. 17-18). For the course of her pregnancy, she chose to stop

taking all medications, and during this time, treatment records from March 2015
through September 2015 consistently revealed rather benign mental status
examinations noting a cooperative attitude, anxiety, and at times, a depressed mood,
appropriate affect, some circumstantial thoughts, generally stable motor activity, and
fair insight and judgment (Tr. 446-61).  In late November 2015, approximately six
weeks after the birth of her son, and a few weeks before the relevant period at issue,
Plaintiff was admitted to the psychiatric unit after a mental status examination
indicated an anxious, irritable, and depressed mood, homicidal ideations,
circumstantial thoughts, and poor insight and judgment (Tr. 466-67).  At a follow-up
examination on December 4, 2015, Plaintiff stated she was now sleeping well and felt
that the medications were helping (Tr. 468).  Plaintiff checked in with her primary
provider, Dr. Gembusia, a couple days later and reported that her depression was
improved, and that she no longer had the overwhelming sadness she had prior to her
admission (Tr. 315-17).  She was having some increase in anxiety symptoms and
requested a medication for this, although her mental examination was noted to be
"grossly normal" (Tr. 315-17).

There are a few notations throughout 2016 and 2017 that Plaintiff had an
increase in some of her mental health symptoms mainly due to situational stressors
related to finances and difficulties with her spouse (Tr. 537, 543, 551, 553, 557), but
even with increased stressors, the record as a whole shows steady improvement and
does not support Plaintiff's contention that the ALJ erred in finding her symptoms
improved.  In April 2016, Plaintiff reported to her counselor that she was "doing
amazing," and her mother echoed this report and stated Plaintiff was "doing very
well" (Tr. 504).  Her mental status examination was entirely normal (Tr. 505).  By
June 2016, Plaintiff was doing so well that she requested assistance weaning off some
of her medications (Tr. 510), and in December 2016, mental examination was normal
and records reveal she had not required her anxiety medications for "many months"
(Tr. 539-42).  Plaintiff reported that she had "been happy lately" and denied
symptoms of depression, mood swings, and anxiety (Tr. 539, 41).  Mental health
treatment records in 2017 continued to document stability and improvement.  In
March 2017, her provider noted that examination revealed she engaged easily in
conversation, had good eye contact, bright affect, clear and goal-directed speech, and
was maintaining clinical stability (Tr. 549-50).  Throughout 2017, Plaintiff reported
little or no anxiety, very low or no symptoms of depression, and irritability that
varied from low to moderate depending on situational stressors with her spouse (Tr.
550-76).  Her mental status examinations were similarly benign and echoed her
reported symptoms (Tr. 550-76).

(Dkt. No. 12-1 at 15–17.)

The Commissioner has the better argument.  "If all of the evidence we receive, including all

medical opinion(s), is consistent and there is sufficient evidence for us to determine whether you are

disabled, we will make our determination or decision based on that evidence."  20 C.F.R.

§ 416.920b(a).  "We will assess your residual functional capacity based on all of the relevant medical

and other evidence."  20 C.F.R. § 416.945(a)(3).  Here, plaintiff suffered postpartum depression but

reported herself that her symptoms were improving as of December 2015.  [318–20.]  *Cf. Smith v.*

*Comm'r*, 731 F. App'x 28, 30 (2d Cir. 2018) (summary order) (Commissioner affirmed where, *inter*

*alia*, "depression, anxiety, and bipolar disorder symptoms were well-managed through medications");

*Britton v. Colvin*, No. 5:13-CV-00907, 2015 WL 1413382, at *13 (N.D.N.Y. Mar. 27, 2015) (behavioral

conditions controlled through medication).  Plaintiff underwent a consultative psychiatric

examination a few months later, on April 4, 2016.  [351.]  Plaintiff displayed an anxious mood and

affect but also adequate speech, thought processes, and attention.  [353.]  Plaintiff also showed

below-average to average cognitive functioning.  [354.]  The psychiatric examiner concluded that

"there does not appear to be evidence of significant limitation in the claimant's ability to follow and

understand simple directions or perform simple tasks independently.  There may be some mild

limitation in the claimant's ability to maintain attention and concentration and maintain regular

schedule.  There may be moderate limitations in the claimant's ability to learn new tasks, perform

complex tasks independently, make appropriate decisions, relate adequately with others, and

appropriately deal with stress, and these difficulties seem to be influenced by psychiatric symptoms

as well as possible cognitive difficulties."  [355.]  Around the same time, plaintiff's primary-care

physician, Dr. Kenneth Gembusia, DO, opined in a note that plaintiff had psychiatric issues that

would "easily place her in a category that is appropriate for Social Security disability."  [361.]  This

opinion goes to the ultimate issue of disability, however—an issue reserved for the Commissioner.

*See Snell v. Apfel*, 177 F.3d 128, 133–34 (2d Cir. 1999) ("The final question of disability is, as noted

earlier, expressly reserved to the Commissioner.") (citation omitted).  By August 9, 2017, plaintiff

was reporting to Olean Medical Group that she had "no depression, no anxiety and no suicidal

thoughts." [399.] The above citations, plus others that the Commissioner has cited, acknowledge plaintiff's psychiatric history but also show improvement over time with the help of medication. Substantial evidence thus supports the ALJ's assessment of plaintiff's anxiety and depression.

Plaintiff next objects that the ALJ did not give enough consideration to the consultative psychiatric examiner's opinions, quoted above, about her functional limitations. "The ALJ makes no reference to the fact that the examiner indicated that on examination she displayed rapid and pressured speech, seemed to be influenced by anxiety or nervousness in the evaluation had anxious and tense affect, and anxious mood. (Tr. 350-351.) Finally, Dr. Hecker [the consultative examiner] concluded that the results of the examination appeared to be consistent with psychiatric problems as well as cognitive problems and they may '*significantly interfere with the claimant's ability to function on a daily basis.*' (Tr. 352). Here the ALJ chose to rely on only a part of the opinion provided by Dr. Hecker that supports the conclusion of a finding of not disabled while ignoring the statement that the claimant's psychiatric problems and cognitive problems may significantly interfere with daily function." (Dkt. No. 10-1 at 26.) The Commissioner responds that the consultative examination "is consistent with the record as a whole that largely reveals relatively mild findings over the period at issue of a cooperative attitude, anxiety, and at times, a depressed mood, appropriate affect, some circumstantial thoughts, generally stable motor activity, and fair insight and judgment." (Dkt. No. 12-1 at 20.) The Commissioner also argues that the opinion of a state agency psychological consultant, Dr. Ochoa, noted mild to moderate limitations that are consistent with the RFC. The Commissioner has the better argument here as well. As the Court noted above, the ALJ concluded that plaintiff "can do simple, routine, repetitive tasks; can have little change in work structure or routine; can have occasional contact with coworkers, supervisors, and the general public; cannot work in teams or tandem; and requires a low stress job meaning no high production quotas or fast-

8

paced assembly." [22.]  The ALJ's RFC effectively addresses every limitation that the consultative examiner said "may" exist; as long as credible limitations were covered, the ALJ did not have to repeat them verbatim.  *Cf. Carthron-Kelly v. Comm'r*, No. 515CV0242GTSWBC, 2018 WL 333827, at *3 (N.D.N.Y. Jan. 9, 2018) (adopting Commissioner's argument that "Plaintiff's argument misses the larger point that the ALJ was under no obligation to issue an RFC finding that tracked [the consultative examiner's] opinion verbatim.").  Substantial evidence thus supports how the ALJ credited the opinions of the consultative examiner.

To the extent that plaintiff has highlighted portions of the record that could be seen as supporting greater functional limitations, resolving factual discrepancies is where the substantial-evidence rule has maximum effect.  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (internal quotation marks and citation omitted); *see also Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) ("We examine evidence both supporting and detracting from the decision, and we cannot reverse the decision merely because there exists substantial evidence supporting a different outcome.") (citation omitted); *Henderson v. Comm'r*, No. 18-CV-00072, 2019 WL 3237343, at *5 (W.D.N.Y. July 18, 2019) (affirming ALJ resolution of RFC where treating physician records supported exertional limits despite other evidence in the record).  Under these circumstances, the Court is obligated to affirm the Commissioner's final determination regardless of how it might have viewed the evidence in the first instance.

III.     **CONCLUSION**

The Commissioner's final determination was supported by substantial evidence.  For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 12) and denies plaintiff's cross-motion (Dkt. No. 10).

The Clerk of the Court is directed to close the case.

SO ORDERED.

_/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: June 9, 2020

10